J-S32030-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.X.O., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.A., MOTHER | No. 66 WDA 2015 |

Appeal from the Order entered December 11, 2014,
in the Court of Common Pleas of Blair County, Orphans'
Court, at No(s): 2014 AD 61

| | |
|---|---|
| IN THE INTEREST OF: A.M.O., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.A., MOTHER | No. 68 WDA 2015 |

Appeal from the Order entered December 11, 2014,
in the Court of Common Pleas of Blair County, Orphans'
Court, at No(s): 2014 AD 61A

BEFORE:  SHOGAN, OLSON, and MUSMANNO, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 22, 2015**

T.A. ("Mother") appeals the decrees dated December 11, 2014, and entered on December 12, 2014, that granted the petitions filed by the Blair County Children, Youth, and Families ("CYF," "BCCYF," or the "Agency"), seeking to involuntarily terminate her parental rights to M.X.O., a male born in March 2006, and A.M.O., a female born in December 2007, (collectively, the "Children"), pursuant to sections 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(2), (5), (8), and (b).[1]  We affirm.

---

[1] In the same decrees, the trial court involuntarily terminated the parental rights of the Children's father, T.O. ("Father").  Father has not filed a notice

The trial court adequately and accurately set forth the factual background and procedural history of this appeal in its opinion entered on January 27, 2015, which we incorporate herein. *See* Trial Court Opinion, 1/27/15, at 1-13. The trial court stated that, on September 25, 2104, after the 48-month permanency/dispositional review/goal change hearing held on September 22, 2014, the court entered a permanency review order changing the permanency goal for the Children to adoption pursuant to section 6351(f) of the Juvenile Act, 42 Pa.C.S.A. § 6351(f). *Id.* at 12.

On October 28, 2014, CYF filed petitions for the involuntary termination of the parental rights of both Mother and Father with regard to both of the Children. On December 4, 2014, the trial court held a hearing with regard to CYF's Motion for 51st Month Interim Permanency/Dispositional Review Hearing, which was combined with the involuntary termination proceedings. At the time of the hearing, A.M.O. was living in South Dakota with Mother's aunt, S.B., who is the twin sister of Mother's mother, L.A. M.X.O. was removed from S.B.'s home, and was residing in a Residential Treatment Facility ("RTF") in Pennsylvania. At the hearing, CYF presented the testimony of Taylor Zindel, the CYF ongoing caseworker assigned to the Children. N.T. Hearing, 12/4/14, at 10-11. CYF then presented the

_____

of appeal from the decrees terminating his parental rights, nor is he a party to the instant appeal.

- 2 -

testimony of A.M.O.'s pre-adoptive foster mother, S.B., via telephone. *Id.*
at 28 and 31. Mother testified on her own behalf. *Id.* at 42.

After the hearing, in orders dated December 11, 2014, the trial court
made the following factual findings regarding Mother.

> [Mother] still has not established any structure or stability
> in her life. By her own admission, she is an addict and
> recognizes this will be a life-long struggle for her. She is
> still residing with her parents, who have a history of
> domestic violence and [] addiction []. They have been ruled
> out as a resource for the [C]hildren. [Mother] has not had
> any personal visits with the [C]hildren since they were
> transitioned to South Dakota. She is permitted to have
> written communication that is supervised by each child's
> therapist. M.X.O. has not demonstrated any interest in
> receiving such letters, until just recently when he wrote a
> letter in return to his mother. [Mother's Exhibit 1].
> [Mother] is in intensive outpatient treatment at Home
> Nursing Agency for co-occurring drug and alcohol and
> mental health issues. Per the report dated December 1,
> 2014, her responsiveness is considered "good," her attitude
> toward service is "excellent," and her progress toward goals
> is "good." [Petitioner's Exhibit 1]. The sexual abuse
> allegations wherein [Mother] was named as the perpetrator
> and M.X.O. as the victim child were unfounded. [Mother]
> passed a polygraph test, and M.X.O. underwent a forensic
> interview, and there was no evidence that these allegations
> were true.
>
> [Mother] has been in and out of treatment for years, and
> still struggles with her addiction issues. She has also
> undergone counseling for personal relationships, anger
> management, art therapy, cognitive behavioral therapy, and
> other mental health services. Despite a multitude of
> services, [Mother] has been unable to demonstrate that she
> can consistently provide a safe, secure[,] and stable
> placement for approximately four years now. [Mother]
> testified that she would relinquish her rights if the
> [C]hildren would be adopted by her cousin. She has had
> three [] [driving under the influence] convictions. [Mother]
> has a mental health diagnosis of post[-]traumatic stress

disorder[,] anxiety[,] depression[,] bi-polar condition[,] and obsessive compulsive disorder. She is currently on three [] different medications.

Trial Court Opinion, 1/27/15, at 14, *quoting* Trial Court Order, 12/11/14, at ¶ 3 (some internal capitalization omitted).

On December 12, 2014, the trial court entered the decrees involuntarily terminating Mother's parental rights to the Children, pursuant to sections 2511(a)(2), (5), (8), and (b) of the Adoption Act. On January 23, 2015, this Court, acting *sua sponte*, consolidated the appeals.

On December 22, 2014, Mother timely filed notices of appeal, along with concise statements of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises two issues:

I. Whether the [trial court] gave sufficient weight and consideration to the progress [Mother] made in mental health treatment in finding that clear and convincing evidence existed to terminate [her] parental rights?

II. Whether clear and convincing evidence existed that the developmental, physical[,] and emotional needs of the [C]hildren would be met by terminating parental rights?

Mother's Brief at 6.

Mother argues that the trial court erred in terminating her parental rights because the court failed to give sufficient weight and consideration to the progress she has made in mental health treatment. **See** Mother's Brief at 13. Mother asserts that she made progress in her mental health treatment that alleviated the circumstances that led to the placement of the

Children.  Mother also contends that the trial court erred and/or abused its discretion in finding that CYF established, through clear and convincing evidence, that the termination of her parental rights to the Children would serve their best interests.  Mother argues that the Children's developmental, physical, and emotional needs are not being met in their current placements. Mother asserts that the Children's needs were better met when they had regular contact with her.

We review the appeal from the termination of parental rights in accordance with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights.  As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  *In re: R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion.  Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As [the Pennsylvania Supreme Court] discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases.  [The *R.J.T.* Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190.  Therefore, even where the facts could support an opposite result, as is often the case in

dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead [appellate courts] must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.*, *quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The trial court terminated Mother's parental rights under sections 2511(a)(2), (5), (8), and (b). We will focus on sections 2511(a)(2) and (b), which provide as follows:

### § 2511. Grounds for involuntary termination

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect, or refusal; (2) such incapacity, abuse, neglect, or refusal caused the child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being; and, (3) the causes of the incapacity, abuse, neglect, or

refusal cannot or will not be remedied. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." If and only if grounds for termination are established under subsection (a), does a court consider "the developmental, physical and emotional needs and welfare of the child" under § 2511(b).
>
> [The Supreme] Court has addressed incapacity sufficient for termination under § 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

- 8 -

> *In re Adoption of J.J.*, 515 A.2d 883, 891 (Pa. 1986), *quoting* *In re: William L.*, 383 A.2d 1228, 1239 (Pa. 1978).

*In re Adoption of S.P.*, 47 A.3d at 827.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d at 337. A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id.* at 340.

The trial court explained its decision to terminate Mother's parental rights under section 2511(a)(2) as follows:

> [Mother] first argues that [the trial court] did not give sufficient consideration and weight to the evidence that [Mother] has made progress in her mental health treatment and that allegations of sexual abuse as against M.X.O. were unfounded. . . . [The trial court does] not believe that [Mother] has made sufficient progress in her mental health treatment. Even as recently as our Permanency Review Order of December 11, 2014, [the trial court] specifically found that "[d]espite a multitude of services, [Mother] has been unable to demonstrate that she can consistently provide a safe, secure and stable home environment for her children."
>
> [Mother's] mental health issues are significant, as she has been diagnosed with [post-traumatic] stress disorder, anxiety, depression, bipolar and obsessive compulsive disorder. Despite her significant mental health diagnosis, she has never consistently invested in mental health treatment over the course of time.
>
> Relative to the allegations of sexual abuse wherein [Mother] was identified as the perpetrator and M.X.O. as the victim, such was determined to be unfounded. Quite frankly, [the trial court was] taken aback when this allegation arose, and

> not surprised when this allegation was deemed to be unfounded. As a result, [the trial court] afforded absolutely no weight to this allegation of sexual abuse in [its] findings, nor in [its] decision to involuntarily terminate the parental rights of [Mother].

Trial Court Opinion, 1/27/15, at 15 (some internal capitalization omitted).

There is ample, competent, clear and convincing evidence in the record to support the trial court's determination that Mother has not demonstrated any ability to remedy the circumstances which led to the Children's placement, nor is there any indication that she could remedy such circumstances in the foreseeable future, even with continued services in place. After a careful review of the record, we find that the trial court aptly discussed the evidence against the requirements of section 2511(a)(2). We will not impose our own credibility determinations and re-weigh the evidence. We must defer to the trial judge's determination, as the factual findings are supported by the record, and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 47 A.3d at 826-27.

After we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of section 2511(b) are satisfied. *See In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *Id.* at 1008.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). It is appropriate to consider a child's bond with her foster parent. *See In re: T.S.M.*, 71 A.3d at 268.

With regard to Mother's second issue, the trial court explained its decision to terminate Mother's parental rights under section 2511(b) as follows.

- 11 -

In her second error complained of on appeal, [Mother] argues that the court did not give sufficient consideration and weight to the evidence that [Mother] has a bond with the [C]hildren despite the efforts of the current foster parent (S.B.) to sever that bond. First of all, there is absolutely no credible evidence whatsoever that S.B. has engaged in any action or efforts to sever the bond between [Mother] and the subject children. [Mother] reached out to S.B., the maternal great-aunt (who is the twin sister of the [Mother's] own mother) to assume custody of the [C]hildren during the course of this dependency proceeding. In all respects, [the trial court] found S.B. to be very credible and sincere in her willingness to serve as a permanent resource for these children, despite their significant issues. The significant issues that the [C]hildren are suffering are directly related to the traumatic and chaotic history that they had while residing in the care, custody and control of [Mother]. [The trial court has] no question that [Mother] loves her children, but [it does] not find that a healthy bond exists by and between them. In fact, both children stated on numerous occasions that they desired to remain with their maternal great-aunt, S.B., in South Dakota rather than return to [Mother's] care in Pennsylvania. In fact, M.X.O. became visibly distraught and was shaking when he learned that he was returning to Pennsylvania, being fearful that such return meant returning to the custody of [Mother].

Trial Court Opinion, 1/27/15, at 15.

Mother also contends that S.B., as the legal custodian of the Children, has impeded her contact with the Children. *See* Mother's Brief at 20. Mother claims that A.M.O. was excited to receive a holiday art project from Mother, but S.B. testified that A.M.O. "raged" after receiving it. *Id.* at 21. She asserts that M.X.O.'s behavior worsened as a result of the lack of contact with Mother. *Id.* She blames M.X.O.'s being moved to an RTF in South Dakota in January of 2013 on S.B., as M.X.O.'s legal custodian. *Id.* Mother also suggests that M.X.O. was moved to the RTF in Pennsylvania in

January of 2014, partly because he was getting out of control at visits with S.B., and was having "meltdowns" with her. *Id.* at 21. Mother contends that S.B. is not meeting the Children's needs and welfare, because the Children were doing much better when they were receiving regular contact and visitation with Mother. *Id.* at 22.

The trial court responded to Mother's additional argument as follows.

> [Mother] raises on additional argument as it relates to M.X.O. She submits that [the trial court] failed to give significant consideration to the best interest of M.X.O. as the termination of parental rights resulted in [his] being confined to a residential treatment facility hours away from family members and without realistic expectation of ever being returned to a family setting within a reasonable period of time. In response, [the trial court] acknowledge[d] that [it is] troubled that M.X.O. is currently in a residential treatment facility and would certainly prefer him to be in a home setting with a family member. It was the initial hope and goal that the transfer of the [C]hildren to their maternal great-aunt, S.B., in South Dakota would result in permanency, with the specific goal being changed at the time of such transfer to P.L.C. (relative). It does appear that permanency with S.B. will be achieved for A.M.O. Unfortunately, the relationship between the siblings is not a healthy one[,] and they needed to be separated for the reasons [the trial court] set forth in [its] Permanency Review Orders. However, S.B. has ensured that there is ongoing contact and communication between the siblings. Necessary services for A.M.O. are being provided in S.B.'s home. Unfortunately, M.X.O.'s needs were much more significant and have resulted in separation from his sibling, and a return to Pennsylvania[,] and placement in a residential treatment facility that is best suited to address his significant needs. It remains the goal of [the trial] court and BCCYF to place M.X.O. with a family member. A potential family resource has been identified[;] however, it is necessary that M.X.O.'s behavior be stabilized before he can be safely transitioned into a family setting. Even though [the trial court is] troubled with M.X.O.'s situation,

- 13 -

> [it is] fully satisfied that a return to [Mother's] custody is **not** the answer.
>
> Therefore, based on the above, [the trial court] respectfully submit[s] that BCCYF established by clear and convincing evidence the statutory grounds for involuntary termination of parental rights under 23 Pa.C.S.A. § 2511(a)(2), (a)(5), (a)(8) and (b).
>
> [The trial court] also submits that the record established by clear and convincing evidence, after taking into consideration the developmental, physical and emotional needs and welfare of the subject children, that the termination of parental rights of [Mother] (and [Father]) would best serve [the Children's] needs and welfare. As a result of the foregoing, [the trial court] respectfully request[s] your Honorable Court to affirm [the trial] court's entry of the TPR Decrees of December 11, 2014.

Trial Court Opinion, 1/27/15, at 15-16 (emphasis in original).

There is ample, competent, clear, and convincing evidence in the record to support the trial court's finding that S.B., the Children's maternal great-aunt, meets all of A.M.O.'s needs and welfare, and that M.X.O.'s significant needs and welfare are being met in the RTF where he resides in Pennsylvania. Although the trial court did not expressly discuss the effect of severing the bond between the Children and Mother in its December 11, 2014 orders, the court indicated in its opinion that it found clear and convincing evidence that a return of the Children to Mother would not be healthy for them, especially for M.X.O. The trial court found that A.M.O., who had been in placement with S.B. for 51 months, desires to remain with S.B.

The competent evidence in the record supports the trial court's determination that that the termination of Mother's parental rights would serve the Children's best interests and that the Children would not suffer any harm from the termination of Mother's parental rights. Our Supreme Court has stated that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." **See In re: T.S.M.**, 71 A.3d at 267, *quoting* **In re K.K.R.-S.**, 958 A.2d 529, 535 (Pa. Super. 2008). The Supreme Court stated, "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." **See In re: T.S.M.**, 71 A.3d at 267 (internal quotations and citations omitted). Thus, we will not disturb the trial court's decision. **In re Adoption of S.P.**, 47 A.3d at 826-27.

While Mother may claim to love the Children, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. **In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in **In re Z.P.**, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." **Id.** at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or

her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Accordingly, we affirm the trial court's decrees terminating Mother's parental rights to the Children pursuant to section 2511(a)(2) and (b) of the Adoption Act.

Orders affirmed. Jurisdiction relinquished.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/22/2015